UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
(NORTHERN (JACKSON))

WALTER EXCELL GRIFFITH,JR                                               PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 3:13cv14-TSL-JMR

COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT
Michael J. Astrue

**REPORT AND RECOMMENDATION**

Plaintiff , Walter Excell Griffith, Jr. ("Griffith" ) filed a [1] Complaint on January 4, 2013 for judicial review of Defendant Commissioner of Social Security's ("Commissioner")  Denial of Griffith's  application for disability benefits under the Social Security Act. Before the Court is the Government's [12] Motion to Affirm Decision of the Commissioner filed on June 27,2013 and Plaintiff's Reply Brief  [14] filed on July 10,2013.

On April 4,2007, Plaintiff filed his application for disability insurance benefits [DIB] asserting that he had become disabled on September14,2005. [7, pp.237-39]. After denial at the initial and reconsideration levels [7,pp.186-93,196-98], Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") [7,p.83-116]. The ALJ held a hearing on January 20,2010[7,pp.83-116] and subsequently issued a partially favorable decision finding that Plaintiff was disabled between September 14,2005 and July 13,2007[7,pp157-78] . Plaintiff

requested review by the Appeal Council. [7,p 205] On April 19,2011, the Appeals Council issued an Order remanding this case to the ALJ , finding the residual functional capacity (RFC) was not supported by the record and that a greater level of functioning was indicated by the record.[7,p.180-184] . A second hearing was held on September 19,2011 by a different ALJ.[7,p.117-53]. An unfavorable decision was issued denying Plaintiff's application [7,pp5-29] and the Appeals Council denied Plaintiff's request for review[7,p14,225]. The Court finds that Plaintiff has exhausted his administrative remedies and has timely filed this action in this Court . The matter is ripe for review under 42 U.S.C.§§405(g), 1383(c)(3).

Plaintiff was 52 years old at the time of the ALJ's decision [ 7,pp 24, 237]. He completed high school, some college, and obtained a master electrician license [7,pp.272, 284]. Plaintiff worked as an electrician for twenty-seven years [7 ,pp 276-78].Plaintiff contends his disability commenced due to the fact he was electrocuted on September 14,2005. [7,p.90] After his accident, at the time of the hearing, he was employed part-time as a music minister [ 7,pp. 278, 279]. Plaintiff alleged disability due to limited range of motion and memory after an electrical burn, history of a blood clot, loss of balance, and unknown brain mass [7,pp. 266, 278].

After a review of the record, the ALJ determined that Plaintiff was engaged in some work between September 2005 and January 2010, but that work was not

performed at the level of substantial gainful activity [7,pp 11-13]. The ALJ determined that the work Plaintiff performed beginning on January 1, 2010 did constitute substantial gainful activity and, therefore, Plaintiff was not disabled as of January 1, 2010 due to work activity [ 7,pp. 11-13].

The ALJ next determined that Plaintiff had the following severe impairments: status post burns from electrocution, residual limited use of the right arm, vertigo, and depression [ 7,p.13]. The ALJ found that none of these severe impairments met or equaled a listing in the listing of impairments [7,pp. 17-18]. 20 C.F.R. Part 404, Subpt. P, Appx. 1. The ALJ concluded that Plaintiff retained the RFC to perform a reduced range of medium work [7,pp.18-21]. Specifically, the ALJ found that Plaintiff could perform medium work except that he could not work outdoors; was limited to frequent overhead reaching, stooping or crawling; occasional climbing stairs or ladders; and no highly detailed or complex job instructions [7,p18] The ALJ concluded that Plaintiff was not capable of performing his past relevant work [7,p. 21].In forming his conclusions, the ALJ relied on the testimony from the vocational expert (VE) to establish that Plaintiff could perform occupations such as hand packager, storage rental clerk, and booth cashier [ 7,pp 22, 148-52]. Thus, ,the ALJ concluded that Plaintiff was not disabled [7,p. 23].

Plaintiff was electrocuted while working as an electrician on September 14,

2005, and had electrical burns [ 7,pp. 321- 25, 341-51]. He underwent skin grafting, and the skin grafts of his right arm, forearm, flank, and thigh all had "good take", but he had nontake of a graft on his right posterior elbow [ 7,p. 323]. Dr. John Williams, from the Baton Rouge General Hospital Burn Unit, diagnosed Plaintiff upon discharge on September 27, 2005, with third and fourth degree electrical burns of the right upper extremity and right flank, thigh, and knee with a total burn surface area of approximately thirteen percent, with electrical muscle injury and myoglobinuria resolved [7,p. 324]. At his first follow-up appointment with Dr. Williams on October 5, 2005, Plaintiff's right elbow graft was failing [7,p.326].

In November of 2005, Dr. Bradley Madden noted Plaintiff had a depressed mood and referred him to a psychiatrist [7,p. 477]. In November of 2005, Plaintiff told James H. Brown, Psy.D., that he had felt depressed for two months, was not feeling useful, more like a burden [ 7,p. 435]. In January of 2006, Plaintiff told Dr. Madden his pain was much improved and he was no longer taking pain medication [7,p.474]. In February of 2006, Plaintiff complained to Dr. Madden of short-term memory loss, but he was able to remember three objects on examination [7,p.473]. Plaintiff had a neurological consultation with Dr. George Wilkerson on February 27, 2006, for complaints of immediate memory loss since the accident. [ 7,pp 358-60]. Plaintiff told Dr. Wilkerson he had issues with distant memory or

with performing day-to-day activities [7, p. 358]. Dr. Wilkerson found that he had some difficulty with immediate recall, but no gross memory deficits [7,p.360]. Plaintiff was referred for neuropsychological testing [7,p.360]. On June 5,2006, Plaintiff saw Dr. Wilkerson again and reported "about two weeks ago that a 'fog' rolled back and his memory started functioning better" [ 7,p. 353]. Dr. Wilkerson noted that the neuropsychological testing confirmed this report, and Plaintiff was in the "superior" range with functioning [ 7,p.353].

Plaintiff was treated with physical therapy from December 21, 2005 through March 9, 2006 and met all of his long-term goals [7,p376]. Plaintiff's therapy treatment notes show that from December 21, 2005 through January 18, 2006 Plaintiff had pain that was rated two out of ten at the worst, and from January 20, 2006, through March 9, 2006, Plaintiff had no complaints of pain [7,pp 377, 401-02]. Plaintiff had increased strength and flexibility [ 7,p. 402].

On May 19, 2006, Dr. William Lewis consultatively examined Plaintiff and noted poor sensation in skin graft areas. [7,p.364] . However, Plaintiff had full flexion of right elbow but he was unable to fully extend his right elbow due to skin tightness, and limited elevation of the right shoulder due to skin tightness. *Id* Dr. Lewis found that Plaintiff had assessed temperature intolerance; impaired mobility and poor sensation in the right upper extremity; hypertension; short-term memory loss; and recent pulmonary embolism [ 7,p. 365].

On May 31, 2006, Plaintiff told Dr. Madden that his memory was much improved [7,p. 471].Dr. Madden opined Plaintiff was doing very well overall. *Id* Dr. Madden noted that Plaintiff had decreased feeling in the areas of scarring from his surgery with a "little bit of difficulty with the dexterity of his right fingers and the strength in his right hand" was mildly less than the left, but the strength was "still pretty good" *Id.*

Plaintiff had a functional capacity evaluation (FCE) on June 29, 2006. [7 at 436, 438] The FCE determined he was capable of performing light level work which was decreased from medium level work due to his increased heart rate, but that Plaintiff's lifting ability was ninety-five pounds from floor to waist, sixty pounds from waist to eye, and eighty-five pounds for two-handed carrying .*Id*

Dr. Brad Madden's letter, dated July 18, 2006, indicates that Plaintiff was "much improved" as Plaintiff's memory as well as his functional status had improved "markedly" [7, p. 445]. Dr. Madden's July 18, 2006 treatment note, also notes Plaintiff reported his memory problems were much improved .[7,p.470]. Plaintiff had significant decrease in feeling in areas of his right arm, right flank, and back area [7,p. 445]. Plaintiff had difficulty with the dexterity in his right hand and fingers, with decreased grip strength in his right hand and decreased range of motion in his right arm .*Id* Dr. Madden opined Plaintiff should be restricted from outdoor field work because of inability to tolerate heat [ 7,pp. 446,470] Mr Madden

assessed a fifteen percent total body impairment to Plaintiff [ 7,pp. 446,470].

On July 27, 2006, Dr. Douglas E. Gorman indicated Plaintiff had a ten percent "disability to right arm" [7,p. 447]. On August 8, 2006, Dr. Madena Gibson, a State agency doctor, reviewed Plaintiff's medical records . [ 7,pp. 367-74]. Dr. Gibson concluded that Plaintiff was capable of frequently lifting and carrying ten pounds, occasionally lifting and carrying twenty pounds, standing and/or walking for about six hours in an eight-hour day, and sitting for about six hours in an eight-hour day. *Id* Dr. Gibson further found Plaintiff would be limited to only occasional overhead reaching with the right upper extremity. *Id* In October of 2006, Dr. Madden noted Plaintiff had a decreased range of motion, feeling and strength in the right upper extremity[ 7,p.469].

In December of 2006, Plaintiff reported to Dr. Madden that he had improvement in his depression and he was becoming more active [7, p.468}. On March 20, 2007, Plaintiff complained of worsening depression after he was fired from his job, and pain in his right upper extremity.[7,p. 407]. Dr. Madden discontinued Lexapro and prescribed Cymbalta because of the side effects [ 7,p.408].

On March 26, 2007, Plaintiff saw Dr. Benjamin Root, Jr., for a mental assessment [7,p. 433]. Dr. Root noted Plaintiff had a depressed mood, but a fairly good memory [7,p. 434]. On June 2, 2007, Dr. Louis Saddler, a State agency

doctor, reviewed Plaintiff's records and concluded that he did not have any functional loss [ 7,p. 403]. On June 16, 2007, Plaintiff complained of right arm pain to Dr. Madden [7,p.404]. Plaintiff reported his depression was improving when he took Cymbalta [ 7,p. 404]. Dr. Madden prescribed Meloxican and Lorcet for pain [ 7,p. 405].

On July 12, 2007, Dr. Buren Smith performed a consultative mental status evaluation [ 7,p. 411]. Plaintiff continued to report that he felt better on Cymbalta [7 ,p.412]. Plaintiff reported daily activities that included helping his wife with housework, wood-working if he was not having too much pain, reading, fishing, yard work, playing with his four- year-old child, attending church service twice a week, attending choir practice once a week, and shopping for groceries on a weekly basis [7,p. 413]. Dr. Smith noted Plaintiff was capable of routine, repetitive tasks, interacting with coworkers, receiving supervision, and maintaining attention and concentration in a work setting [7,p. 414]. Dr. Smith noted Plaintiff had adequate basic communication and social skills. *Id*

In August of 2007, Amy Hudson, Ph.D., a State agency doctor, reviewed Plaintiff's records and noted he had no severe mental impairments [ 7,p. 416]. On March 2009, Dr. Root sent a letter to Plaintiff's attorney, indicating that he had treated Plaintiff for anxiety and depression with Cymbalta and Ambien [ 7,p.449]. Dr. Root opined that it was unlikely that Plaintiff would be able to return to his prior

employment, that Plaintiff would continue to need the prescribed medication and that may have the need for additional psychotherapy. *Id*. Two months later, Dr. Root noted that Cymbalta was "working fairly well" and Plaintiff was in better spirits [7,p. 454]. In December of 2009, Plaintiff complained of an increase in right arm pain and a decrease in function in the right arm to Dr. Madden [7,p.466]. Dr. Madden noted Plaintiff should not work until he was evaluated by an orthopedist . [ 7,p. 467]. On July 23, 2011, Dr. Joseph W. Gunter examined Plaintiff and noted no problems with grip, strength, dexterity, range of motion, or swelling in Plaintiff's right arm [7,p.478- 79]. Dr. Gunter noted that Plaintiff had decreased sensation in the skin grafts [ 7,p.479]. Dr. Gunter found Plaintiff had no physical limitations. [7,p.480]

The courts review the Commissioner's denial of social security benefits is limited to inquiries concerning whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 109 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999)). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id*. (citing *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance."

*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted); see also *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). The Court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's decision. *Brown*, 192 F.3d at 496. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." Id. (quoting Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)).

Plaintiff contends that the ALJ erred in stating that he sought treatment for arm pain solely on two occasions, and his consideration of Plaintiff's memory loss failed to discuss Plaintiff's lack of concentration and depression. [ 11,pp. 28-34].

Defendant asserts with respect to Plaintiff's right arm pain, after the initial surgery for his work accident in September 2005 and as early as January 2006, Plaintiff reported his pain was much improved and he was no longer taking pain medication [ 7,p. 474]. Defendant contends Plaintiff's physical therapy treatment notes show that between December 21, 2005, through January 18, 2006 Plaintiff rated his worst pain at two out of ten. Moreover, as of January 20, 2006, Plaintiff had no complaints of pain through March 9, 2006 [7,pp. 377, 401-02]. Defendant alleges that Plaintiff did not complain of right upper extremity pain again until March of 2007.[ 7,p. 407]. After that visit, on June 16, 2007, Plaintiff complained of right arm pain to Dr. Madden [7,p. 404]. Defendant asserts that Dr. Madden

prescribed Meloxican and Lorcet for pain [7,p. 405]. In December of 2009, Plaintiff complained of an increase in right arm pain and a decrease in function in the right arm [ 7,p.466]. Thus, Defendant admits that the ALJ's conclusion that Plaintiff only sought treatment for right arm pain on two occasions may have failed to include Plaintiff's additional complaint of arm pain in March 2007, but Defendant asserts that the ALJ correctly described Plaintiff's right upper extremity impairment as one that did not preclude his ability to work [ 7,pp 18-21].

Defendant supports the ALJ's finding by contending that on May of 2006 Dr. Madden notes that Plaintiff had a "little bit of difficulty with the dexterity of his right fingers and the strength in his right hand" was mildly less than the left, but the strength was "still pretty good" [ 7,p. 471]. Defendant further submits that Plaintiff's FCE on June 29, 2006, determined he was capable of performing light level work, decreased from medium due to an increased heart rate, but that Plaintiff's lifting and carrying ability was not less than sixty pounds [7,pp. 436,438]. Defendant asserts that the record demonstrates Plaintiff met all of his long-term physical therapy goals by March 2006 and had increased strength and flexibility [7 ,pp. 376, 402]. Defendant submits that almost six years after his accident, in July of 2011, Dr. Joseph W. Gunter examined Plaintiff and noted no problems with grip, strength, dexterity, range of motion, or swelling in Plaintiff's right arm and no physical limitations [ 7,pp.478-80]. In light of the aforementioned medical

determinations, the Court finds that the ALJ properly evaluated Plaintiff's complaints of right arm pain and limitations caused by the pain..

Defendant contends with respect to Plaintiff's depression, that the ALJ specifically discussed Plaintiff's psychological treatment with Dr. Root and Dr. Smith's consultative mental examination [ 7,p. 15].  The ALJ concluded that Plaintiff's depression was a severe impairment [ 7,p. 13]. As a result of this conclusion, Defendant submits that the ALJ limited Plaintiff to the performance of work which did not involve highly detailed or complex instructions [ 7,p. 18]. Plaintiff was first referred to a psychiatrist in November 2005 [ 7,pp 435, 477]. In December of 2006, Plaintiff reported to Dr. Madden that he had improvement in depression and was more active [ 7,p. 468]. On March 20, 2007, Plaintiff complained that his depression increased after he was fired from his job [ 7,p. 407]. Plaintiff had stopped taking his depression medication due to side effects but when Dr. Madden prescribed Cymbalta on June 16, 2007, Plaintiff reported that he was less depressed [ 7,p.404]. On July 12, 2007, Plaintiff reported he "feels better" on Cymbalta [7,p. 412] Defendant submits that Dr. Smith found Plaintiff had a mildly depressive affect and mood, with intact recent and remote memory and adequate immediate recall [7,p. 413]. Defendant contends Dr. Smith noted Plaintiff was capable of routine, repetitive tasks, interacting with coworkers, receiving supervision, and maintaining attention and concentration in a work setting [7,p.

414].Defendant submits  Dr. Smith opined Plaintiff had adequate basic communication and social skills [ 7,p. 414].

Defendant further submits that in August of 2007, Amy Hudson, Ph.D., a State agency doctor, reviewed Plaintiff's records and concluded he had no severe mental impairments .[7,p.t 416].  While  Dr. Root  opined in March of 2009 that it was unlikely that Plaintiff would be able to return to his prior employment [7,p. 449]. Defendant asserts the medical evidence supports the ALJ's determination that Plaintiff was not disabled by mental impairments. Defendant submits that Dr. Root's opinion is consistent with the ALJ's determination, as the ALJ also concluded that Plaintiff could not to return to his prior employment [ 7,p. 21].

As to  Plaintiff's allegations that the ALJ did not consider Plaintiff's alleged inability to concentrate or focus, Plaintiff supports his allegations with his testimony the testimony of his wife.[11,pp. 30-31].Defendant submits that  Plaintiff never reported a loss of ability to concentrate to any treating or examining medical provider. Defendant asserts that  Dr. Smith found in his examination in July of 2007 that Plaintiff was capable of maintaining attention and concentration in a work setting [7,p. 414).  Defendant submits  Plaintiff reported loss of short-term memory and depression, both of which were considered  by the ALJ [ 7,pp.15, 19].  The Court finds in light of the record that he ALJ properly concluded that Plaintiff's only severe mental impairment was depression [ 7,pp. 13-17].

Plaintiff alleges that the ALJ did not properly consider Dr. Madden's July 18, 2006 letter [ 11,pp. 34-35]. Plaintiff asserts that the ALJ erred in giving more weight to Plaintiff's FCE than to the limitations noted by Dr. Madden in his July 18, 2006 letter [ 11,pp. 34-35]. Defendant submits that the ALJ discussed Dr. Madden's July 18, 2006, letter in detail in his decision, noting the limitations identified by Dr. Madden [ 7,pp. 14, 19].

Defendant contends that the ALJ noted that Dr. Madden found difficulty with dexterity and grip in the right hand and decreased range of motion in the right arm, and did not recommend working outside [ 7,pp. 21, 445-46]. Moreover, the ALJ noted that he accepted Dr. Madden's limitation for outside work and included Dr Madden's opinion in Plaintiff's RFC, but the ALJ gave greater weight to the FCE finding regarding dexterity, grip strength, and decreased range of motion [ 7,p. 21]. However, despite the ALJ's characterization, Defendant argues that there is no discrepancy between the FCE and Dr. Madden's assessment. Defendant submits Dr. Madden refers directly to the FCE findings indicating Plaintiff had 140 degrees of right elbow flexion; elbow extension and pronation/supination was within normal limits; grip strength was thirty-three pounds less on the right side than the left; and, that Plaintiff could carry thirty pounds less on the right side than on the left [7,p.446]. Defendant contends Dr. Madden noted that the FCE concluded Plaintiff was capable of performing at the light level of work [7,p. 446]. Thus, Defendant

contends that Dr. Madden did not make any findings contrary to those of the FCE [7,p. 446]. Dr Madden opined that he did not know whether Plaintiff's difficulties were permanent so that he was assessing a current impairment of fifteen percent, and that he did not recommend Plaintiff work outside or do field work because of heat intolerance [ 7,p. 446]. While Dr. Madden did note deficiencies in dexterity, grip strength, and range of motion, the FCE determined that Plaintiff was capable of performing light work, even with those deficiencies [7,pp. 436-44]. This determination was supported by the physical therapist who performed the FCE sent to Dr Madden wherein he specifically noted limitations in grip strength and carrying, but rated Plaintiff as performing at the light level of work [7,p. 436].. Thus, Defendant submits despite the ALJ's statement that he was weighing the FCE results more heavily than those of Dr. Madden and Plaintiff's argument that the two were in conflict, that the two determinations are consistent. Defendant asserts that Dr. Madden did not dispute the FCE findings or make any more restrictive findings except for a restriction on outdoor work, which the ALJ adopted [7,pp. 21, 436-44, 445-46].

Finally , Plaintiff contends that the ALJ also erred in weighing the FCE evaluation more heavily than Dr. Gorman's finding that Plaintiff had a ten percent impairment to the right upper extremity [7,pp. 35-36]. The ALJ found that Dr. Gorman's assessment of a ten percent disability to the right arm in his July 27,2006

letter was not consistent with the FCE, and the ALJ gave the FCE more weight [ 7,p. 21]. In his July 2006 letter, Dr. Gorman states that he last saw Plaintiff on March 8, 2006, when he was released from care [7,p. 447]. Dr. Gorman opines that Plaintiff was under the care of another doctor who would be better able to address Plaintiff's return to work status, and noted that a FCE could be done to determine "any restrictions or qualifications of his job" [ 7,p.448]. After his letter , Plaintiff did have an FCE which found he was capable of light work[ 7,pp. 436-444]. Thus, Defendant submits Dr. Gorman acknowledged he could not provide an accurate current assessment of Plaintiff's limitations, and the ALJ relied on the later FCE recommended by Dr. Gorman [ 7,p. 21].

Plaintiff asserts that the ALJ failed to consider the entire record [14,p.1] and he specifically points out that the Amy Hudson noted on August 18,2007, that Plaintiff had one or two episodes of decompensation.[7p.430 ] However, there is no other indication in the record of extended decompensation. Also, Hudson noted in the same rating of functional limitations that Plaintiff's restrictions on daily living, difficulties in maintaining social functioning and maintaining concentration, persistence or pace were all mild. While the decompensation was not noted in the ALJ's finding, this limited condition does not appear to change his determination.

In addition, Plaintiff challenges the decision as the Commissioner failed to properly address his vertigo condition because he did not evaluate the fact that

Plaintiff alleges he cannot drive an automobile because of his condition. [14,p.1-2]. Plaintiff supports his contention with the March 26,2007evaluation by Dr, Root , a neuro-psychiatrist. Upon his first examination for mental assessment , Dr Root states at the end of his report that Plaintiff reported he was not driving because of his vertigo and that "he is to continue holding off driving for the time being"[7,p.438]. There is no indication and the record does not support a finding that Plaintiff was to hold off driving forever. Dr. Root recommended the Plaintiff return into weeks for a followup appointment. *Id* On August 20,2007, Plaintiff cancelled his appointment. [7,p.431] While Dr. Root provided additional medical reports, they do not address this issue.

     Finally, Plaintiff contends that the ALJ failed to properly consider Plaintiff's inability to frequently reach overhead in concluding he had the residual functional capacity to perform medium work. [14,p.3]The ALJ called on the expertise of a vocational expert, who opined that given Plaintiff's RFC, he was capable of performing work that existed in the national economy, including the medium level unskilled job of hand packager, and the light unskilled jobs of storage rental clerk and booth cashier [ 7,p. 150-52]. The ALJ, relying on the VE testimony, concluded that given Plaintiff's RFC, he was not disabled because he could perform jobs that exist in significant numbers in the national economy [ 7,pp 22-23]. The jobs listed due not appear to require any significant overhead reaching.

The courts review the Commissioner's denial of social security benefits is limited to inquiries concerning whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 109 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999)). The Court finds that if the Commissioner's "findings are supported by substantial evidence, they must be affirmed." *Id.* (citing *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)). The Court finds that the substantial evidence supports the ALJ's RFC finding. Thus the Court recommends that  and that the ALJ 's final decision  be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge andon all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 27th day of January, 2014.

*/s John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE